UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                              |   |                            |
|------------------------------|---|----------------------------|
| VERNON STANCUNA,             | : |                            |
|     Plaintiff,               | : |                            |
| V.                           | : | CASE NO. 3:05-CV-1723 (RNC) |
| JOSEPH J. PRENDERGAST,       | : |                            |
|     Defendant.               | : |                            |

RULING AND ORDER

Plaintiff Vernon Stancuna brings this action under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), claiming that defendant Jospeh J. Prendergast, an investigator with the U.S. State Department, entered his home in violation of the Fourth Amendment. Defendant has moved for summary judgment. The motion is granted for substantially the reasons stated in defendant's supporting papers.[1]

I. <u>Legal Standard</u>

Summary judgment may be granted when there is no "genuine issue as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To withstand a properly supported motion for summary judgment, the opposing

---

[1] Plaintiff's memorandum in opposition to the motion for summary judgment attempts to raise new claims. Defendant correctly argues that any such claim is procedurally improper and may not be considered. <u>See, e.g.</u>, <u>Mutts v. S. Conn. State Univ.</u>, No. 04CV1746, 2006 WL 1806179 at *7 (D. Conn. June 28, 2006)(slip opinion)(collecting cases).

party must come forward with "specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A genuine issue of material fact does not arise from mere conclusory allegations. Plaintiff must offer "significant probative evidence tending to support the complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)(quotations omitted).

II. Background

The record before the Court, viewed most favorably to the plaintiff, would permit a jury to find the following facts. Plaintiff's business activities involve frequent international travel. The Connecticut Passport Agency became suspicious when, according to their records, plaintiff claimed to have lost or damaged at least six passports between 1994 and 2005.

On October 24, 2005, at approximately 5:30 p.m., defendant Prendergast went to plaintiff's home accompanied by a United States Postal Inspector. The agents were dressed in plain clothes and carried holstered weapons. Plaintiff was not home at the time but he soon arrived. The agents approached him, identified themselves as government law enforcement agents, showed him their badges, and told him "We got to talk to you." Plaintiff told them to "come in," and led them to the dining room. Plaintiff was then

interviewed for approximately an hour and a half.[2] In response to Prendergast's demand for all passports the plaintiff had in his possession, plaintiff provided two passports to Prendergast for which Prendergast gave him a receipt.

III. Discussion

Pendergrast's warrantless entry into plaintiff's home was unlawful unless plaintiff voluntarily consented to the entry. Cf. Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973) (warrantless search done "pursuant to consent . . ., [and] properly conducted, is a constitutionally permissible and wholly legitimate aspect of effective police activity"). "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Id. at 227. In determining whether consent was coerced, courts consider "the possibly vulnerable subjective state of the person who consents." Id. at 229. The ultimate question, however, is whether the officer had an objectively reasonable basis for believing that consent had been given. See United States v. Isiofia, 370 F.3d 226, 231 (2d Cir. 2004)(quoting United States v. Garcia, 56 F..3d 418, 423 (2d Cir. 1995). See also United States v. Drayton, 536

---

[2] Plaintiff concedes that he engaged Prendergast in a discussion about his estranged wife and sought Prendergast's help in connection with his wife's alleged illegal activities. (Pl.'s L.R. 56(a)(2) Stmt. ¶¶ 30-37.)

U.S. 194, 202 (2002); Florida v. Jimeno, 500 U.S. 248, 251 (1991); Illinois v. Rodriguez, 497 U.S. 197, 185-86 (1990).

Plaintiff admits consenting to the entry by Prendergast, but argues that his consent was merely acquiescence to the agent's claim of lawful authority and was, therefore, involuntary. Plaintiff does not allege that Prendergast said he had a right to enter the home, and he admits that Prendergast did not threaten him, brandish his weapon, make any display of force, or come into intentional physical contact with him at any time. To support his claim, he simply avers that he was "scared out of [his] life," felt "muscle[d]" when the agents displayed their badges, and felt he "had to cooperate." (Stancuna Dep. 65:5, 14-17; 70:25.) Prendergast claims that, regardless of plaintiff's alleged inner turmoil, all outward manifestations of his state of mind objectively indicated that his consent was freely and voluntarily given. Plaintiff offers no evidence to the contrary.

Prendergast contends that on this record, no reasonable jury could find that his reliance on plaintiff's consent was objectively unreasonable. I agree. He further contends that, in any event, he is entitled to qualified immunity. In this regard, he urges that on the current record, a jury would be bound to find that a reasonable officer in his position could think the plaintiff's consent was voluntary. Here again, I agree.

4

IV. Conclusion

Accordingly, the motion for summary judgment [doc. #49] is hereby granted. Judgment will enter for the defendant dismissing the complaint.

So ordered.

Dated at Hartford, Connecticut this 30th day of March 2008.


_____/s/_____
       Robert N. Chatigny
       United States District Judge